May I please record? Good morning, my name is Neil Pedersen and I'm the counsel for the plaintiff and the appellant in this matter, Mr. Brent Trenier. I intend to reserve two minutes for rebuttal if so... Keep an eye on the clock. I will, thank you. If it turns red then you're in minus territory. Got it. So long as it's green or yellow, you still have time left. Very good. You know, this appeal is first about admissibility of evidence that was excluded from consideration in the motion for summary judgment, and second, about improper standards of the plaintiff's burden of coming forward with evidence and standards related to McDonnell-Douglasburg shifting analysis. I'd like to start with the admissibility of evidence issue. And with that, the trial court swept aside a great volume of admissible and highly relevant evidence that established that Mr. McDonnell-Douglasburg had been subjected to race discrimination in the workplace. Specifically, when the court made the nonspecific blanket ruling that HR Generalist DeRue's testimony was, quote, riddled with hearsay and therefore swept out entirely from the record below. One instance where he found that it was not that finding, Your Honor. I believe that every single statement attributed to Ms. DeRue. If it's not offered for the truth there, then what relevance does it have? Well, that's my point is, is that it was being offered for the truth and every single statement made. But it was hearsay? No, Your Honor, it was not. And that's the point I'm making here. If it's offered for the truth there, it sounds like hearsay to me. Now, I can come up with a couple of arguments for exceptions to the hearsay rule. It's almost impossible not to find an exception to the hearsay rule. Which is actually my point, Your Honor. Here, every single statement attributed to Ms. DeRue or that she testified about when people were speaking to her. What's your exception? 801-D2D. Which is which one? Federal Rules of Evidence. As you, as the Court understands, there are certain that... I'm not too good on the numbers. Give me a name. I will. Okay. That's actually an exclusion from hearsay, isn't it? It is an exclusion, not an exception, which makes it not hearsay. So I know you never want to contradict a district judge. And I try not to as much as... But I think the answer is not every out-of-court statement is hearsay under the Federal Rules. Admissions of a party or opponent are not hearsay. Adoptive admissions are not hearsay. And those are two or three other things that are just simply not hearsay, even though it's stated out of court. Precisely. So I think your answer, perhaps, to Judge Walter should have been no. I may have misunderstood the question because the intention... Why is it not hearsay? Okay. Because, as Your Honors probably understand, hearsay is generally considered to be unreliable, but there have been exceptions made that because of their inherent reliability that they become not hearsay. Which one are... How many do you... They're all listed under F.R.E. Rule 801-D2D, which provides that a statement is not hearsay if the statement is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed. If that situation exists, it's not hearsay. And I would suggest to you that every single statement that Ms. DeRue had presented, that we presented to the underlying court from Ms. DeRue, fell into that exception. Talking about Ms. Matthews, right? Certainly that's one of them and one of the biggest ones, but there are several others. There are perhaps two dozen statements that Ms. DeRue had that we presented to the underlying trial court that all fall into this situation where they... Two dozen statements and a laugh. I'm very sorry. I didn't hear... Two dozen statements and a laugh. And a laugh. That's correct. That is correct. And so each one of them are a situation where the statement is being offered against host, was made by an employee of host, was made within the scope of that employee's job responsibilities for host, and was made at the time that both actors, the speaker and the listener, were employees of host. So for instance, if we talk about Ms. DeRue specifically, the records establish that she was an HR generalist responsible for the LAX property. Part of her job duties were to and handling hotline calls, that she received race complaints that she talked about in her testimony through the hotline, which was established as a policy by HMS for purposes of employees reporting race discrimination complaints. And specifically, the complaints she talked about were complaints that she received through that hotline. In that situation, it was squarely within her job responsibilities to be speaking to Ms. Fullart, her boss, the HR manager at the HR facility, speaking to the hiring manager and the director of operations, Ms. Hernandez and Mr. Crisman, in speaking, in reporting certain issues to corporate HR, to Ms. Megan Zipp, who was the regional manager of the HR for the company. The point is that every single one of her communications was squarely within her responsibility and were speaking to people that also had within their responsibility the job of dealing with race discrimination in the workplace. By sweeping aside all of Ms. DeRue's statements, by claiming it being riddled with hearsay, was simply a misunderstanding of D2D, which says that those of course, unless you look specifically to 801D2D. That said, we then turn to the issue of, as a plaintiff, I have a responsibility to prevent a motion for summary judgment. I have to be able to establish a genuine issue of material fact as to each of the elements of my potential cause of action. My cause of action for my client was a violation of the Fair Employment and Housing Act, but as the justices are certainly aware, that we can also look at the case law regarding Title VII. The essential jury instructions are the same there. And in that specific case, there are two different ways that the plaintiff can attempt to establish a genuine issue of material fact regarding the element regarding that the adverse employment action was motivated by my client's membership in a protected class. One is through direct evidence and one is through circumstantial evidence. We can do either or both. We have that option as the plaintiff. And what I would suggest to this Court is that we did both to the underlying Court. As to the direct evidence, the Godwin case decided by this Court says that when the plaintiff offers direct evidence of discriminatory motive, a tribal issue as to the actual motivation of the employer is created even if the evidence is not substantial. And in fact, there is a lot of authority out of the Ninth Circuit, Godwin, McGinnist, Linsdell. I'm sorry. It's easier to understand your argument if you refer to specific statements it applies to. Okay. I'd be happy to do so, Your Honor. I understand. You're saying these are direct statements and this case law saying how you deal with direct statements. Which of these you think are direct statements? Yes, Your Honor. I would start with the Taniki Matthews statement made to Ms. DeRue that when Ms. Matthews learned from Ms. DeRue that Mr. Trenier was not being offered the position, she said they did not want another black person in there. Even the trial court called that statement a significant piece of admissible evidence in direct support of the plaintiff's discrimination claim. I'm sorry. They did not want another black person there is a statement from whom? From Taniki Matthews, who was the third member of the team that did the panel interview. There was Mr. Crisman, Ms. Hernandez, and those two had hiring authority. They brought a third manager in. I just want to make sure I understand. So she is making a statement that references statements made by the others. So it's hearsay. It's double hearsay. The first level might not be hearsay, but it's two levels of generic hearsay, let's say, right? Yes, I would say that in a standard analysis you have to look at both levels of the communication. I'm not arguing with you. Do you agree that it's two levels of hearsay? I agree it's two levels of communication, but I would not say it's two levels of hearsay because both are subject to FRE rule 801D2D because any of the communications made in the conference after the three of them... I was really asking a slightly different question. Okay. You can take her statement as saying, look, they said we don't want another black person here, or it could be a statement as, you know, I was dealing with them and my perception is, you know, what I got out of the conversation, they just didn't want another black person there. So I'm just wondering what you think this statement of hers is and why you think it is direct. You see, if you view it in the second sense, that this is her perception, that does not wind up being a direct statement of discrimination, right? I would respectfully disagree with you, Your Honor. If we look at the case laws to what is considered evidence of direct discriminatory animus, we don't have to prove that there was direct animus toward my client. Simply that there are statements made or actions that occurred that suggest that there's a discriminatory animus in the heads of the decision makers. And so whether or not they specifically said to Ms. Matthews, we don't want Mr. Trenier because he's black, would not matter. If she, as a result of her perception of the panel meeting or panel interview and then the discussions thereafter, which the defense says that she was part of that discussion and decision making process, if she came away from that and then walked out and made the statement to Ms. DeRue that they don't want another black person, that would be more than sufficient evidence to establish direct evidence of a discriminatory animus with regard to the decision makers here. How far did you get to explore the exclusion of the evidence about Ms. Matthews? You mean with the underlying trial judge? Yeah. We did not get to explore the issues with that. It came out in the opinion from the court and that was not specifically argued or addressed with the judge. I'm sorry. Go ahead. Am I being too simplistic in distilling your argument to this that if the evidence of Ms. DeRue and Matthews was improperly excluded, then summary judgment should not have been granted? That is absolutely my argument, yes. And the reason is because as a plaintiff in a discrimination action, the case law is replete with references to the fact that all the plaintiff has to do is provide very little evidence, not even substantial evidence. It's your best shot at a reversal, right? It is. It is. Now, that doesn't get you past the, there's one more hurdle that you have to get past and that is that the other side gets an opportunity to explain this. Then you have to show that there was not pretextual. I respectfully disagree, Your Honor. If we do the McDonnell-Douglas burden shifting analysis, that's true. If I come forward with evidence of direct intent, animus, then I go down what I call column A and we don't go through the burden shifting analysis of the McDonnell-Douglas test. We only go through the burden shifting analysis of the McDonnell-Douglas test if I'm bringing only circumstantial evidence to the table. Then I have to prove the first four elements of my prima facie case, the burden shifts back to me to prove a little bit of evidence of pretext. But I, although we did, I believe, do that for purpose. Given the significance, is there anything else that you point to as being direct evidence of? Yes, Your Honor, I do. You pointed out to that statement. Yes, I do. In fact, I've got about a dozen. So let me run through them pretty quickly here. Yeah, why don't you do that. Okay. The LAX assessment report says that there are issues between Hispanics and African-Americans at all levels. And that's a report generated by Megan Zip, a regional director of HR. Mr. Crisman, one of the decision makers, said, has never recommended the hiring of an African-American store manager. HOST did not hire a single African-American store manager during its massive hiring in 2013. Whoa, whoa, whoa. You've got, yeah, a lot of these things have real problems with them because you have no baseline. You have no idea. You have no comparative statistics here to show you how many people applied for these positions and what the race was of the applicants. And I do agree with you in that regard. But for my plaintiff's burden to overcome, being so small, all I have to do is have evidence that creates the inference of discriminatory animus. And I've satisfied my burden. And so that's why these are pieces of evidence. So, and your argument is, if you presented this, this evidence, and the other side didn't say anything, that we would have to either grant you summary judgment or give a directed verdict? If the other side didn't say anything, no, that's not what I'm saying. All I'm saying is I am trying to say that. And how do you satisfy your burden of proof if that's not the case? I don't have a burden of proof. I have a burden of producing evidence. And that's the key. All I have to do is come forward with evidence that is very small, not even substantial, in order to allow me to take this issue to a jury. That's all I'm arguing today. You don't have to provide enough evidence that if a jury believed you, that would be sufficient to persuade the jury? All I have, no. All I have is a burden to come forward with evidence that is not even substantial, not even preponderance of the evidence, that would suggest a discriminatory animus, and that allows me to get past the motion for summary judgment and move  And that's the McDonnell-Douglas test. And that is Godwin, McGinnis, Lindahl, Lowe, and Sisko, all from this court, talking about the very small, minimum, non-substantial burden that I have at this stage. As I understand, you're brushing aside McDonnell-Douglas. You're saying, by God, if that evidence had come in about Ms. Matthews, I'm home free. That is exactly true. We only talk McDonnell-Douglas if we go to our secondary, what I call column B. I haven't really talked that much about it because I believe we have very strong evidence of direct discriminatory animus. And if anything, that Matthews statement alone should have been enough to allow us to survive the motion for summary judgment and be in a jury trial. I see my time is up, so unless you have any other questions. Thank you. Why wasn't DeRue Matthews enough? Sorry, Your Honor? Excuse me. Why wasn't DeRue Matthews enough? Tom Warren, Your Honors. The reason DeRue and Matthews wasn't enough is that neither one of them was a decision maker. And, you know, I would refer, Your Honors, because the colloquy is interesting about... I'm sorry. Why does it matter whether a decision maker or not? Because one is speculation and the other one isn't. I'm sorry? One is speculation and the other one isn't. If Matthews had testified, Your Honor, that Chrisman and Hernandez had told them, we didn't want to put another black person in there because Chrisman and Hernandez are your only decision makers. I would submit that would be problematic for granting summary judgment. But she didn't say that. In other words, first of all, Matthews didn't say it at all. But put that aside for the moment because this is summary judgment. But she said, I just knew that was going to happen. Well, first of all, she, remember, Matthews isn't testifying to that. DeRue... I understand that. ...is testifying if that's what Matthews said. Matthews said she didn't say anything of the kind. But let's assume for the sake of argument she said that. And I'm going to refer, Your Honors, to a particular Ninth Circuit case that I think is probative on this matter. It's 799F2nd at 470. It's called Brenneman, which deals with a situation where a plaintiff is attempting to introduce a statement from an employee who's testifying about what a... Is it in your brief? No, it isn't. I found it this weekend, Your Honor. I didn't want a 28-J this morning because I figured I would have a chance to bring it up. And also to avoid having your opposing counsel read it and be able to answer, right? Your Honors, I submit it's not... It is not... This weekend? You mean like yesterday you could have done it? I could have, Your Honor. You know, our PACER window is open 24-7. Your Honor, I... I am willing to bet good money, but I wouldn't that you have a PACER account. I do, Your Honors. And if I ordered you to file something in the next 10 minutes, you'd know how to do it, right? I would. Okay. I don't... I just thought this particular case was interesting. I don't think that the case is announcing a principle... Well, it would be helpful to have it here to look at, which would have if you had cited it. I don't have it to look at. I have to take your word for it. Opposing counsel doesn't have it to dispute what it says. Well, let's just talk about the general principle then so that we don't get into a question about what a particular case is. So the general... It's not a good practice to raise things at oral argument that you haven't given notice to the court or the other side that you're going to rely on. Very bad practice. We raised... You're not going to teach your associates to do that, are you? Your Honor, we raised this issue in our wraith. No, but the citation, you know, you want to talk about the case, right? So why don't you go on? Okay. So the principle here in Judge Walter, you talked about the question of when this is hearsay and when it isn't. So in the employer-employee context, this comes up quite often in discrimination cases. So when you have an employee who is testifying about what another employee is testifying about, what another employee is testifying about or has stated. And the rule is that in order for that statement to be non-hearsay or an exclusion under 801D2D, which is the provision that Mr. Patterson was speaking about, it needs to be something that's within the scope of the individual's employment. So... They were not sitting there, you know, talking about baseball. They were talking about employment. They were talking about whether somebody is going to be hired or not hired. They're talking to somebody in the context of trying to make a decision whether to recommend a hire or not hire. So how is this not in the scope of employment? Well, I think if you take a look at what Mr. Rueh as an HR manager, and I think Mr. Patterson fairly states that when she would receive complaints, perhaps raise complaints during the course of her job, that that might be something that would be in the course and scope of her employment. But she played no role in the hiring process. I'm sorry. So what was this? I mean, we have to sort of take this through this conversation to place. Yes. So what was it? Just a water cooler chatter? What is this communication? Well, we are presuming, of course, that this communication occurred. Well, assuming for the sake of argument... I don't think I understand that. You think you're giving me news? We have to presume that to be able to talk about this. This is the whole basis of it, you know. So we have to assume that this communication took place because they alleged it, right? Right. So let's not say anything more about that. Okay, Your Honor. All right? All right. So Mr. Rueh testifies that Ms. Matthews speculated to her about what the decision was. Ms. Matthews was not a decision maker in this case. So he said speculated? No. Okay. That's your said is the correct term, right? That's what he said. Okay. They didn't want another black man. So it's a statement? Yes, Your Honor. Okay. So we have the statement part of it. Yep. Now is Ms. Matthews, are all the people involved employees? Yes. Okay. So we have the employee part of the 801, okay? And was this in the scope of the employment? No. Okay. Tell me why not. Well, I think arguably, let me back up. With respect to Ms. Matthews... I'm sorry. So the question is, is it within the scope of the employment? You want to take back your answer? Yes. You want to take back your... I'm going to take back my answer. Okay. So... With respect to Ms. Matthews' statement, to the extent Ms. Matthews said that, it would have been within the scope of her employment. However, the district court in this case did not consider that to be hearsay. So the question with respect to that statement was not whether or not there's hearsay or whether or not there was a problem with the district court's ruling. The district court did consider that. The question was whether or not speculation about what the decision actually was predicated on was sufficient evidence to show discrimination. And in this situation where you have a nondecision maker, Ms. DeRue, testifying about what another nondecision maker speculated about the decision, that was insufficient to show direct evidence of discrimination. And I think that, Your Honors, it needs to be looked... First of all, I think that this needs to be looked at through the lens of the... In what sense are these people now decision makers? Ms. DeRue was part of the committee. Am I getting a cast of characters? Ms. DeRue was not. Ms. Matthews was on the panel that interviewed. On the panel, okay. But ultimately didn't have decision-making authority. That was, as Mr. Patterson stated below, the only individuals who were decision makers in this case, and I believe it's uncontested, are Mr. Chrisman and Ms. Hernandez. Let me ask you a question. If that evidence was improperly excluded, you lose? It wasn't excluded, Your Honor. And we win. It wasn't excluded. It was considered by the district court. The question really becomes what is the... It was excluded in the judge's mind whether he made a ruling at the time. He certainly seemed to have excluded it in his decision, didn't he? No, Your Honor. With respect to that particular statement, not only did the district court consider that statement, the district court acknowledged that that statement was perhaps the most, you know, let's say compelling piece of evidence. If we decide that the judge was wrong in that, you lose? No, Your Honor. Why? Well, first of all, I think we need to look at it through the lens of the same actor and friends, and I think that... I'm sorry, so the lens of what? The same actor inference, Your Honor. There is a doctrine in employment law that says that if the panel that is accused of making an adverse employment decision is also the one that has made a positive employment decision, that there is an inference that the act was not done in a discriminatory fashion. And that is a principle that is a Ninth Circuit principle that was articulated... Okay. Assuming it is... How does it apply here? Well, because Mr. Trenier was hired for a managerial position at host. Although he wasn't hired for the managerial position that he desired, he was hired for a managerial position... Well, less a managerial position. Yeah, but nevertheless, a managerial position where... If they made him a janitor, then all okay? I think obviously the inference would be much less compelling in a situation like that. When Mr. Trenier was hired, he was hired on May 16th. He was offered the position. He didn't file his lawsuit until July. He accepted the position in August. So this... So what case stands for this inference? The cases that we cited, Your Honor, were Bradley and Schechter. Are those in your brief? Yes, they are, Your Honor. For that proposition? They are in here. Okay. Bradley v. Harcourt Brace? Yes. Schechter, I don't recall the... See, when you cite them, I have them. Schechter. I have Schechter, but I do have Bradley. You got them. Okay. So where on Bradley? Tell me about Bradley. Okay. Well, these are Bradley, and Bradley was a termination case, and Schechter was a failure to promote case. So they stand for the proposition that when you have the same panel that is alleged to have committed discrimination, also being the same panel that hired the plaintiff, that there is a strong inference that it was not committed based on discrimination. And obviously the... I think that Bradley... I think the way it's articulated is that an employer's willingness to hire an employee provides strong evidence that the... Strong inference. Strong inference that there is no bias towards the protected class of which the employee is a member. But not compelling. It's not. All it does is it shifts the quantum of proof to an extraordinary. I think the way it's phrased is an extraordinarily strong showing of discrimination. So in Mr. Patterson's reply brief in this case, he states that the strong actor inference is not the law of California, which is obviously relevant here since we're dealing with an FEHA case and not a Title VII case. But that is, I would submit, not an accurate statement of law. The case that Mr. Patterson... Let me try again. I'm not saying that the judge was wrong in excluding it. I'm just asking you, if he was wrong, do you lose? I don't know, Your Honor. We don't lose. Why? Because the plaintiff has insufficient evidence to make out a prime efficient case, whether the strong same actor inference applies or not. Because the evidence in this case is only speculation by non-decision makers. What are the hallmarks of a traditional discrimination case? You would have testimony from people who receive race complaints. You have Ms. Matthews, who admittedly didn't have a vote, but she's been in there for the interviews and the discussions, and she walks out and she says, when told the decision, well, I'm not surprised. They felt like they had too many blacks. You don't find that the scintilla of proof of discrimination? No, I don't. With respect, Your Honor, I don't need. It's more than a scintilla. You have to show specific and substantial. How about the other stuff, you know, never hiring a black manager? I mean, the opposing counsel listed quite a few things. Are they all nothing? Yes, Your Honor. Or how about never hiring a black manager? They have. I mean, Ms. Matthews, who was on the panel. Is there not evidence saying that they didn't? That is correct, Your Honor. So you're asking us to be jury here, to evaluate which evidence is correct? No, Your Honor. So what do you do with the fact that there is this evidence in the record? I think that the district court properly reviewed that evidence and found that there was insufficient evidence to find discrimination. There was no statistical evidence. I know the district court did, but I'm trying to help decide what we should do. Why is the district court not wrong on that? Every single piece of evidence offered by the plaintiff in this case. And all of them put together? And all of them put together is evidence, is the testimony of a non-decision maker about what other individuals who were non-decision makers said or speculated about the decision-making process. And under this court's case law and under the case law of the FEHA in cases such as King, in order to get past prime and facial case, much less to get past the showing of pretext, you have to show specific and articulable and substantial non-speculative evidence of discrimination. And remember, this court, as you're well aware, can affirm this whether you would do it based upon the court's finding that there was not a showing of a prime and facial case or because there was insufficient showing of pretext. And, you know, all of the findings of the court, even to the extent that it would articulate a prime and facial case, would certainly not rise to the level, given the same actor inference, of discrimination. I'm running out of time. If Your Honors are of a mind that this is sufficient to get past the prime and facial case, I would submit that we – that the Court should look at the question of whether or not Mr. Trenier was qualified for the job. And although Mr. Trenier suggests in his reply brief that the same actor doctrine – excuse me – the after-acquired evidence doctrine is not permitted in California, every case that has considered McKinnon has, with the exception of one California intermediate court, has found that after-acquired evidence is relevant to the question of establishing the prime and facial case of the employee in this case. Let me ask you about the same actor doctrine, because I found a place in Bradley where they discuss it, but that was a case where there were different employees. And it says somebody has both hired and fired a minority. Same employee, Your Honor, I believe. Same employee. In other words, the predicate for the rationale is that if I hire you and then I fire you, and you claim that I discriminated against you. I see. So this is hiring and firing. So this is comparing hiring and firing. Schecter is a failure-to-promote case, so an individual is hired but then isn't promoted, but by the same individual or individuals. Right. So this is a little bit of a different scenario in that the same panel – Let me finish. I'm sorry, Your Honor. But here you're saying he didn't get hired for the job he wanted. He got hired for something less. Correct. And you want to compare those two things and say this is the same. Do you have a case that applies that doctrine to a situation where he doesn't get what he wants, he doesn't get that, but he gets something less? No. It doesn't quite make sense, right, that it applies the same way. Well, consider hypothetically that instead of offering Mr. Trenier the managerial job that he got, that they had hired him for the managerial job that he wanted and then had demoted him a week later to the position that he got. Under that factual scenario where Mr. Trenier would end up in the same place within the organization, the same actor inference would say that because the host had hired Mr. Trenier, was willing to hire Mr. Trenier, the fact that he ultimately ended up in the job, did not end up in the job that he wanted, but nevertheless the same actor inference would apply. And although these two are essentially collapsed into one hiring decision, analytically I think they are the same. There has to be some effect that the host's decision to hire Mr. Trenier, the individual accusing them of discrimination, to a managerial job at host where he was supervising more than 30 employees and running two restaurants. There has to be some evidentiary or inferential impact of that on the analysis. And so although the factual scenario is not exactly the same. Yeah, I think you're in the same position. All right, thank you. Thank you. I don't remember whether you had any time left. Yep. I have a couple of decisions to make. I'm not sure whether that's a red or a yellow. Oh, it's red. I was at red when I finished, Your Honor. Well, why don't you take a minute. Thank you, Your Honor. There are just two quick things I would like to address. Number one, the word decision maker is nowhere in Federal Rules of Evidence 801 D2D. I already talked about what the requirements are. I think that my opponents are making a much higher standard to turn this into non-hearsay than actually the standard is. But it has to do with speaking in the scope of employment, right? Yes, I agree, Your Honor. In each case, Ms. DeRue, who is an HR generalist, has responded. So if somebody is an employee and, you know, sort of witnesses some meeting of the board or, you know, some group, and then goes out and has coffee with another employee and says, wow, you won't believe what happened, you know, boy, that would still be a conversation between two employees, but it wouldn't be in the scope of employment because there's nothing that the conversation promoted the purposes of the employer, right? Certainly. I agree, but that's not what we have here. Okay. Why don't you explain? Okay. For instance, when we're talking about the more than 15 complaints that Ms. DeRue handled related to race complaints for Ms. Hernandez, or the four to five complaints, these were all complaints that came in on the hotline. That was her job to take those calls and to process those complaints and report them to her boss, Ms. Fullart. When we're talking about speaking to her manager about a bad hiring decision, a decision that was made on unlawful grounds related to discrimination, that's part of her job and part of her boss's job. We're not talking about a couple of people that are having juice after a racquetball game. They're talking about an interaction in the office in reaction to their learning of this particular hiring decision. All of these facts- Well, doesn't the conversation have to sort of be promoting the employer's purposes? I mean, just sort of having a reaction to something is not the same as saying we're having a meeting where we make decisions that advance the employer's purposes. Yes, I think that that's reading too much into F.R.E. 801-D2D, because when you read the plain language of that, they merely have to be employees and speaking about a subject which is within the subject matter of their responsibilities with the company. I'm paraphrasing. Was Mr. Rue involved in this process at all? I mean, the long process. Had she called Mr. Trenier on the phone to invite him in? She had reviewed his resume? Yes. She was the one that did the initial review of the resume and did an initial- She was only employed by Host for about six months. Is that correct? She was a short time. I'm not sure if it was that short, but it was a short time, yes. And she was terminated by Host? Yes. Do we know why? I don't know if that's in the record. I don't know. I'm sorry. The only other thing I wanted to raise was the idea that the same-actor doctrine, when you're talking about, I want this level job, and they later hired him for this level job, that's not a same-actor doctrine. In fact, that's evidence of an adverse employment action. But they did hire him for a managerial position. Yes. But I would take it-before I was a lawyer, I was a grocery man. I was in the produce department. And you have a store manager and you have a department head and then you have an assistant department head. This would be akin to saying you can't be the store manager, but you can be an assistant department head and work yourself up someday, and that is an adverse employment action if you didn't get that upper-level position but was offered a position two levels below the one that you were trying to get and should have gotten had there not been race discrimination involved. Thank you very much. Okay. Thank you.
judges: Kozinski, Bybee, Walter